Ida Jordan, Plaintiff-Appellee, v. Pearl Savage, et al., Defendants-Appellants.

Gen. No. 50,096.

First District, Fourth Division.

August 18, 1967.

Meyer, Gorov & Feder, and Orner & Wasserman, of Chicago (Norton Wasserman, of counsel), for appellants.

Abrams, Linn and Mix, of Chicago (B. John Mix, Jr., and David Linn, of counsel), for appellee.

MR. PRESIDING JUSTICE ENGLISH delivered the opinion of the court.

Plaintiff brought this action to recover damages for injuries sustained in a fall down a stairway as she left her apartment in a building located at 2920 South Wentworth Avenue, Chicago. Summons was returned showing service on defendants Steve and Pearl Savage and on their son-in-law, defendant John Simack, by serving John Simack, Jr., grandson of the Savages and son of

John Simack, at the latter's home located at 506 West 32nd Street, Chicago. Soon after this service defendant Simack filed his answer to the complaint. Thereafter, the court granted plaintiff's request to increase the ad damnum from $10,000 to $50,000. Approximately sixteen months after the complaint had been filed, defendants Steve and Pearl Savage entered a special and limited appearance questioning the jurisdiction of the court over their persons and moving to quash service of summons. Their motion was denied, and the Savages then entered a general appearance and filed an answer to the complaint in which they admitted owning the building at the Wentworth address on the date plaintiff was injured. The cause proceeded to trial before a jury which returned a verdict for plaintiff in the amount of $12,000, and judgment was entered on the verdict by the magistrate presiding. Defendants appeal the judgment on several grounds.

■ ■ Defendants Steve and Pearl Savage contend that the judgment against them is void for want of jurisdiction, arguing that service of process against them was defective and their motion to quash such service should have been allowed. This contention is partially meritorious since it appears from the affidavit attached to their motion that the Savages, on the date summons was served, did not reside at 506 West 32nd Street, but, instead, were physically present in the State of Arizona where they had resided for about five years. Substituted service under these circumstances was clearly improper and denial of their motion to quash constituted error. Ill Rev Stats 1963, c 110, § 13.2(2). However, the Savages later appeared generally and filed an answer to plaintiff's complaint, thereby waiving the error in the court's ruling. The Civil Practice Act (Ill Rev Stats 1963, c 110, § 20(3)) provides:

If the Court sustains the objection (to jurisdiction), an appropriate order shall be entered. Error

254

in ruling against the defendant on the objection is waived by the defendant's taking part in further proceedings in the case, unless the objection is on the ground that the defendant is not amenable to process issued by a Court of this State.

■ The relevant question for determination, thus, is whether the Savages, though not amenable to the kind of service attempted, were amenable to some service of process issued by a court of this State. The Civil Practice Act clearly affords the requisite amenability when considered with reference to the allegations of plaintiff's complaint. It provides:

§ 17. Act submitting to jurisdiction—Process.

(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of said acts:

. . . . . .

(c) The ownership, use, or possession of any real estate situated in this State;

. . . . . .

Ill Rev Stats 1963, c 110, § 17(1) (c).[1]

The answer filed by the Savages admitted ownership of the premises wherein plaintiff allegedly sustained her

---

[1] Plaintiff's amended complaint, which charged that defendants had "negligently attempted repairs on the handrail," also places defendants within the reach of § 17(1)(b) of the Civil Practice Act which subjects a person to the jurisdiction of the court if he has committed a "tortious act" within the State. The proof, however, shows that Steve Savage alone made the repairs, so this provision would not have submitted Pearl Savage to the jurisdiction of the court.

255

injuries, and at no time during the course of the trial was the fact of their ownership put in issue. Their motion to quash service of summons was aimed not at the amenability of the Savages to the jurisdiction of the court, but, rather, at the mode of substituted service used. Therefore, when they elected to litigate the merits of the case instead of standing on their motion, the jurisdictional point was waived. Ill Rev Stats 1963, c 110, § 20 (3) ; Spencer v. American United Cab Ass'n, 59 Ill App2d 165, 170, 208 NE2d 118; O'Flaherty v. Osborn, 26 Ill App2d 152, 153, 167 NE2d 563.

The next contention, in which all defendants join, is that it was prejudicial error to require defendants to submit to a jury trial presided over by a magistrate in a case involving a claim for $50,000 in damages. It is true that at the times pertinent to this case the Assignments to Magistrates Act provided that civil proceedings were assignable to magistrates only when the claim for damages did not exceed $5,000. Ill Rev Stats 1963, c 37, § 622. That Act also provides, however:

> All objections to the propriety of an assignment to a magistrate are waived unless made before the trial or hearing begins. No order or judgment is void or subject to collateral attack merely because rendered pursuant to improper assignment to a magistrate. Ill Rev Stats 1963, c 37, § 628.

■■ Defendants recognize that the above statutory language is controlling here,[2] but contend that their objection to the magistrate in the instant case was "made before the trial or hearing" began. The record shows that defendants raised their objection to assignment of the case to Magistrate Ouska after a panel of twelve

---

[2] There is no question but what the magistrate had jurisdiction to hear the case despite the improper assignment. Coleman v. Scott, 76 Ill App2d 417, 222 NE2d 5.

veniremen had been called to the jury box, sworn for examination, and the first panel of four jurors selected. Defendants argue that all twelve jurors must first be sworn for trial before a jury trial can be said to have begun. While Hay v. Reed, 93 Ind App 592, 178 NE 873, an Indiana Appellate Court case, seems to support this proposition, we are far more persuaded by the decision in Wilhite v. Agbayani, 2 Ill App2d 29, 33, 118 NE2d 440, where the court stated:

> In general it has been held that the trial begins when the jury are called into the box for examination as to their qualifications and that the calling of a jury is part of the trial. 53 Am Jur Trial, section 4.

To the same effect is Jost v. Hill, 51 Ill App2d 430, 433, 201 NE2d 468. Courts in other jurisdictions have also agreed: Kadota v. City and County of San Francisco, 166 Cal App2d 194, 333 P2d 75; Pratt v. Bishop, 257 NC 486, 126 SE2d 597; Re McIntyre's Estate, 78 ND 10, 47 NW2d 527. We are aware that decisions in criminal cases have held that jeopardy does not attach until after selection of the jury has been completed and the jury sworn to try the issues. O'Donnell v. People, 224 Ill 218, 222, 79 NE 639; People v. Friason, 22 Ill2d 563, 565, 177 NE2d 230. We do not consider that these cases present quite the same issue.

Defendants further contend that there can be no waiver without knowledge, and that they made timely objection to the assignment of Magistrate Ouska the moment they became aware of his status. The record reveals, however, that, prior to his denial of this objection, the assignment judge questioned defendants' counsel as to his acquaintance with the court and was not persuaded by the latter's claim of lack of knowledge. We see no basis for disturbing the conclusion of the assignment judge in this regard.

Defendants contend next that there is no evidence to support the verdict of the jury, and that the trial court erred in not directing a verdict for defendants. The facts which follow were established by the evidence. Plaintiff moved to the building owned by defendants in about 1950. The Savages informed her that they owned the building and she agreed to pay them $100 a month rent. There was no written lease. Plaintiff testified that Mr. Savage told her that in return for the rent "he would keep it in repair." Mr. Simack testified that, as owner, he understood he "would be called upon to make repairs when the need arose." [3]

Plaintiff's apartment was in the front part of the building on the second floor, and no one resided on the first floor immediately below. The building fronted on Wentworth Avenue and the entrance to the building housed a stairway with about 25 steps leading straight up to the second-floor apartment. This was the only means of access to plaintiff's apartment. There was a banister along the stairway, and plaintiff testified that about a month and a half before the accident, upon notice from her as to its defective condition, Mr. Savage personally came to the building to fix the banister. Plaintiff observed him pull the banister off the walls with his hands and then reattach it by driving nails through the banister into the wall. In the weeks intervening between the time of this repair work to the banister and the time of the accident, plaintiff noticed that the banister was still loose, but she did not notify Mr. Savage of

---

[3] The evidence showed that the Savages transferred title to the building to Simack approximately three years prior to plaintiff's accident. However, plaintiff testified that at all times she paid her rent to the Savages. When the Savages were in Arizona, she would send the rent to them by mail. Simack stated: "The building was in my name, sir. And since my in-laws were in Phoenix, I was more or less a caretaker in their name."

258

this fact and the latter did not return again to the premises prior to the accident. No one else attempted to repair the banister. The stairs were constructed of wood, and on several occasions plaintiff had observed nails exposed from the uncovered wood. She or her late husband would sometimes attempt to remove the nails, but many remained.

At about 10:00 a. m. on November 27, 1963, plaintiff, dressed in her work clothes [4] (plaintiff was a dietician), left her apartment and began to descend the stairs. Her right hand was on the banister and after she had taken two steps there occurred the accident which plaintiff described as follows:

> Well, I was going downstairs, and I know we had some nails—there was some nails in the stairway. Kept rising, but often they nail them. I stepped on the nail and caused me to slide. My foot got hung to my coat, and I held on the banister with my hand. When I fell—and when I fell me and the banister— we went downstairs.

Photographs of the condition of the stairway and banister at the time of the accident were admitted in evidence.

Defendants' argument proceeds as follows: (1) the stairway in question was not a common stairway; (2) where a stairway on the leased premises is in the exclusive possession of the tenant, the landlord is responsible only for concealment of known defects and this principle is not affected by a general covenant to repair; (3) there was no evidence that defendants had concealed any known defects. This argument is a product, we think, of a misconception of plaintiff's theory of the

---

[4] Defendants attempted to elicit on cross-examination that plaintiff wore a long house coat at the time of the accident, but plaintiff denied this.

259

case. While plaintiff charged in one part of her complaint that the stairway in question was a common stairway and that defendants had a duty to use reasonable care in its maintenance, she also charged that her injury was a proximate result of Mr. Savage's "negligently attempted repairs on the handrail." In this court plaintiff disavows that her theory of recovery was based on a common stairway. She did not submit an instruction on the law concerning common stairways, and, indeed, concedes that there was no proof of a concealed defect known to defendants in this case.

 Where the jury verdict is supported by one legitimate theory of recovery, defendants do not advance their cause by relying on other theories which may not have been proved. Absent a common stairway, and none was proved here, a landlord is under no obligation to repair portions of the rented premises which are in the exclusive use of his tenant unless there is proof that the landlord had actual knowledge of the defect and fraudulently concealed it. Taylor v. Geroff, 347 Ill App 55, 59, 106 NE2d 210; Breazeale v. Chicago Title & Trust Co., 293 Ill App 269, 12 NE2d 217. But in this case there is evidence that at the time plaintiff rented the premises, the Savages promised to maintain them in good repair. More important, there is evidence of conduct which implements this promise and supports plaintiff's charge of active negligence against the owners. Informed by plaintiff of the defective condition of the banister, Mr. Savage proceeded to make the repairs, and in so doing was either attempting to meet his already existing obligation (if we credit the alleged oral promise to repair) or he was enlarging his responsibility to plaintiff by a voluntary undertaking. In either circumstance he was obligated to exercise ordinary care in accomplishing the repair. As this court stated in Nelson v. Union Wire Rope Corp., 39 Ill App2d 73, 121–122, 187 NE2d 425:

There can be no doubt that the law has for many years recognized the principle that liability can arise from negligent performance of a voluntary undertaking. (Coggs v. Bernard, 2 Lord Raymond 909; 86 CJ2d 927; 38 Am Jur 659; 5 HLR 222.)

. . . . . .

Thus, for example, a landlord who is under no obligation to repair the premises, but who nevertheless makes repairs, and does so negligently, is liable to his tenant . . . for injuries caused by such negligence. (Roesler v. Liberty Nat. Bank of Chicago, 2 Ill App2d 54, 118 NE2d 621; Kimmons v. Crawford, 92 Fla 652, 109 So 585.)

The case of Roesler v. Liberty Nat. Bank of Chicago, 2 Ill App2d 54, 118 NE2d 621, not cited by either party, is remarkably similar on its facts to the present action. There, plaintiff alleged that defendant negligently maintained a common stairway, negligently failed to repair some loose steps therein, and as a result of such negligence plaintiff was injured. At the trial the evidence in Roesler showed that:

Plaintiff, over a period of nine years, was the first-floor tenant of defendant; that a rear staircase, used exclusively by plaintiff and not in common use by the other tenants, led from the rear of her apartment to the ground; that the stairway consisted of five wooden steps, which she used on an average of once a week when taking out the garbage; that over the period of nine years a custom was established of complaints made by plaintiff at the office of defendant whenever something in the apartment needed fixing, and thereupon defendant would dispatch a carpenter . . . to make the necessary repairs; that some time in January 1949, plaintiff

261

made complaint at defendant's office about the stairway in question being loose; that in response to the complaint, . . . the carpenter put some nails in one of the boards on the step, and then told plaintiff that the steps were all right, . . . . (At pp 56–57.)

The complaint was then amended to conform with the proof and charged that "defendant voluntarily undertook to make repairs on said stairway, and negligently repaired the same so that it remained in a defective and hazardous condition, and failed to exercise ordinary care in the repair of said defective condition, resulting in an accident and injury to plaintiff." In answer to defendant's argument that he was under no obligation to make the repairs and he should not be held liable for a gratuitous undertaking, the court stated at pages 58–60:

When defendant dispatched a carpenter in response to her complaint, to make the necessary repairs, it became the duty of defendant to examine the staircase and determine its condition of safety. If a reasonable inspection would disclose the rotted condition of the step which broke, and upon which plaintiff fell, then it should have been apparent that the driving of several nails into the board was not sufficient to remedy the condition, and a jury could well determine that defendant was negligent in the repair work undertaken. . . .

. . . . . .

" 'It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all.' . . . A landlord in these circumstances is not charged with liability on the basis of the non-performance of a voluntary promise. He is charged with liability because having chosen to perform he

has thereby become subject to a duty in respect of the manner of performance. . . . The tenant does not have to prove that by the negligent making of the repairs what was wrong has been made worse. His case is made out when it appears that by reason of such negligence what was wrong is still wrong, though prudence would have made it right." [Quoting Marks v. Nambil Realty Co. Inc., 245 NY 256, wherein Justice Cardozo quoted from another of his decisions in Glanzer v. Shepard, 233 NY 236.]

█ Plaintiff in the instant case testified that she observed Mr. Savage as he performed repairs on the banister: "He finished pulling it off the wall, and, then, attached it back on them. . . . Just took his hand and pulled it on off, and he got nails and put it back on." Photographs of the stairway submitted in evidence reveal that Mr. Savage attached a board to the banister and then secured the board and banister into the wall plaster with straight nails. The jury could reasonably have concluded from the cracked and deteriorated condition of the wall plaster, clearly shown by the photographs in evidence, that straight nails would not be adequate to secure the banister under the stress of use, and that their use under these circumstances constituted negligence.

██ While defendants contend further that the giving way of the banister was not a proximate cause of plaintiff's injuries, this was for the jury to determine; and also to decide whether the sole proximate cause of plaintiff's injuries was the catching of her foot in her coat when she stepped on a nail, or the failure of the banister to support her when she sought to right herself. We think there is ample evidence to support the verdict of the jury.

██ Finally, defendants urge that the court erred in giving plaintiff's instructions 18 and 20 and refusing

to give defendants' instruction 18. Plaintiff's instruction 18 informed the jury that "[a] landlord who undertakes to make improvements or repairs upon the leased premises is under a duty to use ordinary care in carrying out the work." As we have indicated above in this opinion, this language properly instructed the jury on the theory of plaintiff's case. Plaintiff's instruction 20 informed the jury that "[i]f a landlord agrees to keep a tenant's premises in a state of good repair, then the landlord must use reasonable care to see that the premises are kept in a state of good repair." This instruction was also proper since there was evidence in the record that defendants had initially agreed to maintain the rented premises in a state of good repair. Defendants' refused instruction 18 would have informed the jury that if they found that the stairway in question was not a common stairway, then defendants' liability could only be based on failure to disclose to plaintiff defects which were known to defendants. For the reasons indicated, there was no error in the refusal of this instruction.

The judgment of the Circuit Court is affirmed.

Affirmed.

DRUCKER and McCORMICK, JJ., concur.