No. 2--08--0281     Filed:  12-23-09

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 05--CF--3441 |
| RONALD E. VEST, | ) ) | Honorable Kathryn E. Creswell, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUDSON delivered the opinion of the court:

Defendant, Ronald E. Vest, appeals from his conviction of one of four counts of predatory criminal sexual assault of a child (720 ILCS 5/12--14.1(a)(1) (West 2004)).  After the swearing of the regular jurors, but before the selection of the alternates, defendant moved for dismissal of that count, asserting that it failed to describe an offense.  The trial court denied that motion.  Defendant now asserts that the court erred when it ruled that, because the flaw in the count did not cause him prejudice, the law did not require dismissal of that count and the State could cure the flaw by amendment.  We affirm, holding that once voir dire had started, the applicable standard required defendant to show prejudice, something that he does not attempt to do.

I. BACKGROUND

Defendant was initially charged by complaint with four counts of predatory criminal sexual assault of a child.  Count III alleged that defendant, who was older than 17, "committed an act of

sexual penetration with A.I., who was under 13 years of age when the act was committed, in that said defendant placed his finger in the anus of A.I." (Emphasis added.)

On December 15, 2005, a grand jury indicted defendant on four counts of predatory criminal sexual assault of a child and two counts of aggravated criminal sexual abuse (720 ILCS 5/12--16(c)(1)(i) (West 2004)). The third count of predatory criminal sexual assault of a child alleged that defendant "placed his finger on the anus of A.I." (Emphasis added.)

The chronology of the case, at least as it is reflected in the common-law record, becomes somewhat unclear around the time of trial. An evidence disclosure by the State has a file-stamp date of December 11, 2007. After that, a large group of filings bears file-stamp dates of December 18, 2007. This group includes grand-jury transcripts, the jury selection form, the verdict forms (with a note that judgment was entered on December 14, 2007), two defense motions in limine, and a series of stipulations. More to the point here, it includes defendant's motion to dismiss count III of the indictment for failure to state an offense and an order denying that motion. That same order also allowed the State to amend the indictment to allege in count III that "defendant placed his finger in the anus of A.I." (Emphasis added.) Plainly, something caused a delay in the stamping of many of these documents.

The file-stamp dates on the documents that are clearly posttrial suggest that those documents received their stamps without particular delay. On January 4, 2008, defendant filed--that is, the clerk stamped--a motion for a new trial. That motion included the assertion that the court had erred in denying the motion to dismiss count III.

On January 15, 2008, the court sentenced defendant to a total of 39 years' imprisonment, a total that reflected consecutive sentences for the four convictions of predatory criminal sexual assault

of a child. On February 8, 2008, defendant moved for a reduction in his sentence. The court denied that motion on March 28, 2008, and defendant filed his notice of appeal on April 1, 2008.

In the transcripts, the chronology becomes clearer. From the transcripts, we learn that, on December 11, 2007, the court acknowledged receipt of motions in limine from both the State and defendant. It noted that it would pick a jury of 12 regular jurors and 2 alternates. Still on December 11, the parties picked the regular jurors and started questioning potential alternates before court adjourned for the day.

Promptly on the morning of December 12, 2007, the defense asked for "leave to file with the court a motion to dismiss on Count Three." The State responded by making an oral motion for leave to amend the indictment. It argued that trial had already started and that the standard for dismissal therefore required that defendant show prejudice. It further argued that testimony before the grand jury had included evidence of anal penetration. The court ruled that the amendment that the State was asking to make was substantial. It deferred ruling on the motions through the remainder of jury selection, and then, with the agreement of the parties, it deferred ruling to allow for research of the standards for dismissal and amendment. Later that day, after the State had started presenting evidence, the court denied defendant's motion and granted the State's, ruling that defendant was entitled to have the flawed count dismissed only if he could show that the amendment would prejudice him.

The transcript persuades us that, despite the file-stamp date on defendant's motion to dismiss count III, defendant filed it on December 12, 2007, after the selection of the regular jurors and before the selection of the alternates.

## II. ANALYSIS

On appeal, defendant asserts that, until the entire jury is sworn, including the alternates, the court should not consider whether a flaw in an indictment prejudices a defendant. At that stage, according to defendant, it should dismiss any count that fails to allege the commission of an offense. The State responds, first, that defendant did not file his motion until December 18, 2007, when the trial was over, and, second, that a prejudice requirement becomes applicable upon the commencement of voir dire. We disagree with the State's first contention, but agree with its second.

The parties agree that, if a defendant moves to dismiss a charging instrument in a pretrial motion, the court should dismiss the relevant count if it fails to allege an offense, whereas, if he or she makes that motion anytime after the trial's start, the court should dismiss the relevant count only if the defect prejudices the defendant. See People v. Cuadrado, 214 Ill. 2d 79, 86-88 (2005). The State does not challenge defendant's contention that the indictment, in stating that defendant "placed his finger on the anus of A.I.," failed to allege the offense of predatory criminal sexual assault of a child. Defendant does not assert that this defect caused him any prejudice. The State, relying on the file-stamp dates in the common-law record, asserts that defendant did not file his motion to dismiss until the trial was over. That is simply a misreading of a confusing record. As we noted, the transcripts show that defendant filed his motion after the regular jurors were sworn, but before the alternates were selected. Thus, the only real dispute is over what event marks the trial's start. That is a question of law, so our review is de novo. See People v. Sutton, 233 Ill. 2d 89, 112 (2009) (questions of law reviewed de novo).

Defendant, relying on People v. Rand, 291 Ill. App. 3d 431, 436 (1997) ("[a] trial is deemed to have commenced after the jury is impaneled and sworn"), asserts that the trial starts only when

the entire jury is sworn.[1]  The State cites People v. Williams, 59 Ill. 2d 402, 404-05 (1974), People v. Johnson, 144 Ill. App. 3d 997, 999-1000 (1986), and Baird v. Adeli, 214 Ill. App. 3d 47, 51 (1991), for the proposition that the start of voir dire marks the start of the trial.  None of these decisions are entirely on point.  In Rand, the issue was whether a defendant had an absolute right to waive a jury trial after the swearing of the jury, but before testimony began.  In Williams and Johnson, it was whether a defendant's right to a speedy trial was satisfied when voir dire, but not the State's case in chief, began in the required time.  In Baird, it was what stage of proceedings marks the end of "before trial" for purposes of voluntary dismissal under section 2--1009 of the Code of Civil Procedure (now 735 ILCS 5/2--1009 (West 2008)).

Rand, the decision on which defendant relies, is the product of a line of double-jeopardy cases in which courts have relied upon the principles that jeopardy attaches when the trial starts and that the trial starts when the jury is sworn.  Because, as we discuss, the critical point for the attachment of jeopardy is the point at which a body has been constituted that has the power to convict the defendant, double-jeopardy cases are not reliable guides to what marks the start of trial. That said, we cannot say that the decisions on which the State relies have sufficient analysis or relevance to make them reliable guides, either.  Our own search of Illinois precedent has not uncovered other decisions to provide an obvious resolution.  In resolving this issue, we have found helpful a line of federal cases that hold that "before trial" means "before voir dire" where a statute requires the United States to notify a defendant "before trial" of its intent to seek a recidivism

---

[1]A potential issue here could have been whether the critical point is the swearing of the last of the regular jurors or the swearing of the alternates. Our holding that the critical point was the start of voir dire makes that a nonissue.

enhancement to the sentence. In particular, we look to the reasoning in People v. White, 980 F.2d 836 (2nd Cir. 1992), which explains why the swearing of the jury as the marker for attachment of jeopardy is not an appropriate marker for the start of trial. We have also found useful to consider why a distinction exists between motions to dismiss before trial and those filed later. As we will explain, we deem that only before voir dire is a defendant's right to an unflawed indictment not to be considered in light of any other considerations.

Rand, defendant's principal authority, and People v. Shick, 101 Ill. App. 2d 377, 378-79 (1968), the case on which the Rand court relied, although not themselves double-jeopardy cases, draw primarily on cases considering when jeopardy attaches. In Rand, the issue was whether the defendant had an absolute right to waive his right to a jury trial after the swearing of the jury but before testimony began. The Rand court ruled that, because the swearing of the jury was the start of the trial, whether to allow the requested waiver was within the court's discretion. In Shick, the issue was whether the court could discharge the defendant based on a purported want of prosecution. The Shick court noted that statute prohibited discharging the defendant until the State had had the opportunity to present its evidence; the court then cited two cases, People v. Friason, 22 Ill. 2d 563 (1961), and Jordan v. Savage, 88 Ill. App. 2d 251 (1967), for the proposition that "[a jury] trial does not begin until the accused has been arraigned and the jury impaneled and sworn." Shick, 101 Ill. App. 2d at 379. Friason held that "[t]he trial and jeopardy begin when the accused has been arraigned and the jury impaneled and sworn." Friason, 22 Ill. 2d at 565. Several older double-jeopardy cases articulate the law in a similar manner. Such cases include People v. Watson, 394 Ill. 177, 180 (1946), and People v. Grevan, 23 Ill. App. 3d 997, 998 (1974). More recent cases typically state that jeopardy attaches when the jury is sworn, but do not assert that the swearing of the jury is

also the start of the trial.  E.g., People v. Henry, 204 Ill. 2d 267, 283 (2003) ("Jeopardy attaches when the jury is empaneled and sworn").

In Jordan, on the other hand, the court stated that " '[i]n general it has been held that the trial begins when the jury are called into the box for examination as to their qualifications and that the calling of a jury is part of the trial.' "  Jordan, 88 Ill. App. 2d at 257, quoting Wilhite v. Agbayani, 2 Ill. App. 2d 29, 33 (1954), citing 53 Am. Jur. Trial §4 (____).  It is thus a case that supports the State's position.  The Jordan court looked to Jost v. Hill, 51 Ill. App. 2d 430, 433 (1964), and Wilhite, two cases concerning the timing for voluntary dismissals in civil proceedings.  The State points to Williams, 59 Ill. 2d at 404-05, Johnson, 144 Ill. App. 3d at 999-1000 (holding that speedy-trial rights are satisfied when voir dire starts in the applicable period), and Baird, 214 Ill. App. 3d at 51 (holding that, for purposes of voluntary dismissal under section 2--1009 of the Code of Civil Procedure, "before trial" means before the start of jury selection), as showing that trial starts with voir dire.  We also take note of People v. Heidelberg, 33 Ill. App. 3d 574, 595-96 (1975), which cites Wilhite for the proposition that the general meaning of "before trial" is before voir dire.

The parties here present us with dueling lines of authority and no clear basis upon which to decide the issue.  However, several federal cases considering the meaning of "before trial" in section 851(a)(1) of title 21 of the United States Code (21 U.S.C. §851(a)(1) (2000)) provide us with sound guidance.  That provision states:

> "No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial *** the United States attorney files an information with the court *** stating in writing the previous convictions to be relied upon."  (Emphasis added.)  21 U.S.C. §851(a)(1) (2000).

The section gives no guidance about the meaning of "before trial." However, the federal courts of appeals have uniformly held that, in this context, "before trial" means "before voir dire starts." See United States v. McAllister, 29 F.3d 1180, 1183 (7th Cir. 1994) (reviewing decisions). We have found the analysis in White to be notably helpful in distinguishing between the start of trial and the attachment of jeopardy.

The White court noted that, in many other contexts, such as speedy trial, federal courts have held that the start of voir dire marks the start of trial, so that the ordinary meaning of "before trial" is "before voir dire." White, 980 F.2d at 841. It recognized, however, that jeopardy attaches with the swearing of the jury and that double-jeopardy decisions thus sometimes call the swearing of the jury the start of the trial. White, 980 F.2d at 841-42. It nevertheless held that double-jeopardy principles are inappropriate in interpreting section 851(a)(1). The trial court in White used a formulation much like that in Friason, holding that, because a "trial begins and jeopardy attaches when the jury is sworn," any time before the swearing of the jury was "before trial" under section 851(a)(1). United States v. White, 764 F. Supp. 254, 255 (D. Conn. 1991). The appellate court in White held that double-jeopardy concerns dictate a different mark for the start of trial than in the general case:

> "The Double Jeopardy Clause protects an individual from twice being subject to the risk of a determination of guilt. [Citation.] That risk comes into play only when 'a proceeding begins before a trier "having jurisdiction to try the question of the guilt or innocence of the accused." ' [Citations.] Accordingly, the risk associated with trial does not occur, and jeopardy does not attach, until the jury has been empaneled and sworn, and is thus competent to dispense a judgment of guilt. These considerations are inapposite to our

inquiry under §851(a)(1), which requires that we determine when the trial begins, not when the defendant's exposure to the risk of a guilty verdict begins. Put another way, the Constitution protects against 'double jeopardy,' not 'double trial,' and the attachment of jeopardy does not occur at the commencement of the trial as 'trial' is otherwise commonly defined." White, 980 F.2d at 842.

We find persuasive the White court's explanation of why the standard for the attachment of jeopardy is inapposite to deciding when, for other purposes, trial begins.

A holding that the trial begins with voir dire is consonant with our understanding of why the supreme court created separate standards for early and late motions to dismiss. In a typical pretrial setting, nothing will prevent the State from returning to the grand jury if necessary to correct an error in an indictment. Thus, no countervailing interest weighs against a defendant's right to an unflawed indictment. However, if the defendant succeeds in a motion to dismiss a count during or after trial, the usual choice for the State will be to either abandon the attempt to get a conviction on the dismissed count or try the dismissed count separately.[2] Once voir dire has started, the problems are similar, as this case illustrates. The parties had already invested a day in selecting a jury. It would have likely been impractical for the State to go before the grand jury to get an amended indictment without releasing the jury it had selected in this case. The possibilities here would thus be (1) abandoning the empaneled jury, with the consequent waste of juror time and uncertainty about whether jeopardy had attached on the properly charged counts, (2) abandoning any attempt to get a conviction on count III, with the consequent reduction in the maximum sentence defendant would face, or (3) trying count III separately, with the consequent waste of resources and strain on

---

[2]The problems are reduced if the dismissed count is the sole count.

witnesses. As this case illustrates, by the time voir dire is underway, certain significant interests must be weighed against a defendant's right to a flawless indictment. Further, a defendant always has protection against an indictment with a flaw that causes him or her prejudice, as a court may grant even a late motion to dismiss in such an instance. The same policy that requires a higher standard for motions to dismiss brought during trial than for motions brought "before" trial compels us to construe "before" as meaning "before voir dire."

Because defendant did not file before trial a motion to dismiss the defective count, under the rule in Cuadrado, he is entitled to have the count dismissed only if he shows that the defect caused him prejudice. Defendant has not attempted to demonstrate how he was prejudiced here. Thus, absent a showing of prejudice to defendant, the trial court was correct to refuse to dismiss count III of the indictment.

## III. CONCLUSION

For the reasons stated, we hold that the trial court correctly refused to dismiss the defective count of the indictment after voir dire had commenced, because the defect did not prejudice defendant. We therefore affirm its judgment.

Affirmed.

O'MALLEY and SCHOSTOK, JJ., concur.