Lloyd F. Forshey *et al.*, Plaintiffs-Appellants, *v.* Clarence Johnston *et al.*, Defendants-Appellees.

(No. 11366;

Fourth District—June 8, 1971.

*Rehearing denied July 6, 1971.*

T. Gaillard Knappenberger, Jr., of Champaign, for appellants.

Phillips, Phebus & Tummelson, of Urbana, (Hurshal C. Tummelson and Joseph W. Phebus, of counsel,) for appellees.

Mr. PRESIDING JUSTICE SMITH delivered the opinion of the court:

Lloyd F. Forshey, plaintiff husband, a tenant farmer, recovered a jury's verdict against his landlord for $4,500.00 as damages when the plastering in the sitting room of the tenant farmhouse fell on him and injured him. His wife likewise sued for loss of consortium and the jury returned a verdict of $0.00. The trial court set aside the verdict and entered a judgment in favor of the defendants and against each of the plaintiffs notwithstanding the jury verdict. The court's action was predicated upon the proposition that a promise on the part of the landlord to repair took place two years after the original oral leasing and was accordingly without consideration and was therefore *"nudum pactum"*. The trial court likewise entered a conditional judgment that if his judgment *n.o.v.* was set aside, then a new trial was granted to the plaintiff wife. Plaintiffs appeal.

The landlord-tenant relationship here reviewed is one that was not too infrequent in a former era. The plaintiff's father became a tenant in 1912 and died in 1947. The plaintiff-son moved on the farm and carried on. The farm was owned by Lee Johnston and his wife in joint tenancy. Lee died in 1957, his wife died in 1962, and the present defendants received this land by virtue of their mother's will. It is not surprising that there is no written lease.

The plaintiff testified that a 4' x 8' section of plaster fell from the sitting room ceiling as he was seated in a chair on the east side of the room where, in moments of leisure, he had sat for more than 22 years and that it just did not occur to him to move his chair to a safer place even though in December preceding the accident he had told one of the defendants that the plastering was coming loose. Apparently in December, there was a sag of some three inches along the east side of the wall which may have extended to four inches at or about the time of the accident.

■■ So far as we can determine there is no testimony as to who made the repairs following the death of the defendants' father in 1957. The record is clear that no repairs were made since the two defendants came into possession in 1962. Since 1957 and in all probability for some time before, the relationship between the landlord and tenant was a tenancy from year to year by operation of law. Ordinarily the mere relationship of landlord and tenant creates no obligation on the landlord to make repairs and absent an express covenant or stipulation binding him to make repairs or to keep the property in repair his obligation is absent. (I.L.P. Landlord and Tenant, par. 281.) Where a landlord was not originally under obligation to make repairs an agreement to repair a porch after a rail was broken off was nothing but a mere gratuity and was *nudum pactum. (Quinn v. Crowe*, 88 Ill.App. 191, I.L.P. Landlord

and Tenant, par. 281.) It seems to follow therefore that before the plaintiff can recover in this case, he must establish that there was a covenant or an agreement by the landlord to keep the premises in repair made at the time of the original leasing and there being no evidence in this record of any change it is presumed that the terms of the hold-over lease are the same as the terms of the original leasing.

■■ Lloyd Forshey on direct examination testified that when he started to operate the farm he had an understanding or agreement with reference to a division of the crops on the farm, the payment for fertilizer and the repairs to the farm home. He testified that that agreement was "the crops was all 50-50 and he (meaning defendants' father), he agreed to keep up the building, the residence, which I done some work on for myself so far as that goes  *   *   *  he said he would keep the house up in good, livable condition and that's one job that the man did." On cross-examination, however, his own testimony casts a bit of a blur upon when the arrangement was made and stated "Oh, I think I have lived there about, about two years when he was out there." Asked if he had any conversation when he first moved on the place regarding the up-keep of the premises, he stated "the only thing he told me that he would keep the house in repair. Q. This was about two years after you moved on? A. That's right  *   *   *. Q. I see, I follow that this time that he said he would keep up the house, it was about two years after you moved in. A. That's right." The defendant, Lillian Johnston Grossman, called as an adverse witness under section 60 of C.P.A., Ill. Rev. Stat. 1967, ch. 110, par. 60, stated "I did not specifically discuss any changes with Mr. Forshey or agree upon any changes with him." The defendant, Clarence Johnston, likewise stated "I do not know what the arrangements were between my father and Lloyd Forshey with reference to the maintenance of the farm residence. My Dad did all the maintenance work. After my sister and I took over the operation, I did not specifically discuss a change from what my Father did or what I would do on the specific point of the maintenance and repair of the farmhouse, but we did discuss what we thought was a proper procedure, it was just a discussion, but no agreement of change was reached, since I did not know the previous arrangement, I could not state a change". Thus, by the defendants' own testimony it appears that their father did the repairs up to the time of his death and this suggests that there was some sort of an agreement about his doing just that at some previous time. Plaintiff said, "*   *   *  the residence, which I done some work on myself, so far as that goes." It seems logical to conclude that one or the other was attempting to meet an existing obligation when he made these re-

pairs, *Jordan v. Savage*, 88 Ill.App.2d 251, 232 N.E.2d 580, or he is a mere volunteer and liable only for the negligent performance of a voluntary undertaking. (See *Jordan.*) There was submitted to the jury the following interrogatory. "Do you find from the greater weight of the evidence that there was either an agreement on behalf of the defendants to repair and maintain the property in question, in a reasonably safe condition, or an agreement to repair made under such circumstances as plainly indicated that liability for personal injuries was contemplated by the parties? A. Yes." It is clear from this record that no agreement was made with the defendants nor were any improvements made since 1962. Their obligation to repair must rest on a previous agreement between their ancestors binding them as a matter of law on a year to year lease. It is equally clear that neither the interrogatory nor the evidence established with any certainty as to when it was made. The landlord's promise to repair made after the execution of the lease is a mere *nudum pactum* as the trial court held and creates no liability against the landlord for failure on his part to make such repairs. (*Margolen v. deHaan*, 226 Ill.App. 110.) Thus, unless the evidence shows that the promise to repair was made at the time the lease was originally entered into, the decision of the trial court that the promise thereafter made was *nudum pactum* is abundantly correct. Likewise the statement by the defendant, Clarence Johnston, that his father did the maintenance work and the plaintiff's statement that he did some work does not with any specificity indicate whether this was before or after plaintiff's tenancy began or just when it was. There was no evidence as to who made the repairs during the tenancy between the plaintiff's father and the defendants' father. It does seem likely that some repairs were made between 1912 or 1967 by somebody and that such fact or facts were suspectible of proof. There is no testimony as to who made the repairs during the five years that the mother was the landlord. There is testimony that no repairs were made since 1962. There is a statement by the plaintiff that he called attention to this ceiling to the defendant Johnston in December, 1967, and that Johnston said he would repair it. Johnston denies this conversation. It is simplicity itself to say that plaintiff must prove his right to recover by the preponderance or greater weight of the evidence. Accepting the jury's answer to the interrogatory as true, there is still a total want of proof as to when the agreement was made. Plaintiff's right to recover upon the terms of a year to year tenancy depends upon proof by a preponderance of the evidence that the obligation to repair was simultaneous with the creation of the lease or was later assumed upon consideration received. This evidence establishes neither.

■■ Counsel suggests that we cannot consider the apparent contradiction in the plaintiff's testimony and cites *Finley v. Chicago, Aurora and Elgin Railway Co.*, 3 Ill.App.2d 436, 122 N.E.2d 594. In that case, the plaintiff testified "the train either stopped or so nearly stopped that it made no difference * * *. So far as I can recall, the train might have come to a full stop when I got on". The issue was whether or not as a matter of law the plaintiff was a passenger when he was injured. In that case there is not the categorical contradiction in plaintiff's own testimony that we have here. The court in Finley held that under either theory the plaintiff was a passenger. Not so here. We have a categorical conflict in the plaintiff's own testimony on a point of time which it was his obligation to establish. The point is crucial. There is no valid express contract to repair. That obligation must be imposed, if at all, as a matter of law. It must be established that it was created at the time the original lease was incubated or assumed for a consideration thereafter. Under the evidence here, the proof presents no factual question for the jury's consideration on a necessary and basic issue and accordingly the judgment *non obstante veredicto* of the trial court is correct. *Pedrick v. Peoria and Eastern Railroad Co.*, 37 Ill.2d 494, 229 N.E.2d 504.

Accordingly, the judgment of the trial court is affirmed.

Judgment affirmed.

CRAVEN and TRAPP, JJ., concur.