YUAN KANE INC, Plaintiff-Appellee, *v.* WILLIAM LEVY, Defendant-Appellant.

(No. 60630; )

First District (5th Division)—February 28, 1975.

Donald L. Johnson and Morley G. Mendelson, both of Curtis, Marks, Katz, Walker & Blatt, of Chicago, for appellant.

Don M. Williams, of Puchalski & Williams, of Chicago, for appellee.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Plaintiff, the owner of a commercial building, brought a forcible entry and detainer action against defendant. Defendant in his answer raised affirmative defenses alleging numerous breaches by plaintiff of her obligations under the lease and claiming that these breaches relieved him of his obligation to pay rent. Defendant was also given leave to file a counterclaim in which he requested money damages and equitable relief to prevent the termination of the lease. The court found for plaintiff on all issues, and a judgment for possession and $2500 for overdue rent was entered on her behalf.

Defendant's basic contentions on appeal are that (1) the findings of the trial court are against the manifest weight of the evidence, and (2) the court erred in refusing to grant a jury trial on his counterclaim.

In August 1971 defendant, who is a real estate broker, leased a storefront office in plaintiff's commercial building at 5782 North Lincoln Avenue at a monthly rental of $300. The lease was for a term of 4 years with an option to renew for an additional 2 years. There was no express covenant imposing on plaintiff the duty to repair the premises. She was, however, required to provide and maintain the heating and air conditioning system. It was expressly provided that plaintiff was not to be held liable for damages suffered by defendant due to her failure to keep the premises or the building in good repair.*

In August 1973 defendant notified plaintiff in writing that the ceiling of his office's bathroom was leaking. On December 3, 1973, a "Landlord's Five Days' Notice" was served on defendant. Payment of $1300 in overdue rent was demanded. On December 14, 1973, defendant notified plaintiff, in writing, that he was prepared to pay all rent which was due if she would repair the premises. On January 17, 1974, plaintiff filed the instant forcible entry and detainer action. In his answer defendant raised the affirmative defense that he was relieved of his obligation to pay rent due to numerous breaches by plaintiff of her obligations under the lease. He alleged that she failed to repair leaks in the roof, pipes running through the ceiling of his office and defects in the heating and air conditioning system.

Defendant was given leave to file a counterclaim in which he raised essentially the same factual allegations as appeared in his answer. He requested equitable relief in the form of an injunction to enjoin defendant from attempting to declare a forfeiture of the lease, and in a second

---

* We note that the Landlord and Tenant Act has recently been amended to make void as against public policy such exculpatory clauses. See Ill. Rev. Stat. 1973, ch. 80, par. 91.

count $5,000 as compensatory damages and $10,000 as punitive damages. He did not dispute plaintiff's allegations as to nonpayment of rent.

At trial plaintiff called defendant as an adverse witness. He testified that subsequent to his being served with the 5 days' notice, he met with plaintiff at his office. He told her, "as soon as these [leaks] are fixed or any attempt is made to fix them, I'll pay the rent." She replied, "Okay." Although she promised to send a plumber to make repairs, one did not appear. Defendant and his employees continued to occupy the premises. He did not pay any rent after receiving the 5 days' notice.

Defendant was then called as a witness on his own behalf. He testified that he spent over $5,200 "fixing up" the office when he moved in.

Philip Kovalsky testified on behalf of defendant that he was present in December 1973 when defendant promised plaintiff to pay the rent he owed if plaintiff would fix the leaks.

Plaintiff testified as a rebuttal witness on her own behalf that she sent a plumber to defendant's office in December 1973 to fix the leaks, but he was refused admittance.

OPINION

Defendant did not question the amount of the money judgment for rent but requested equitable relief to prevent dispossession.

It was apparently defendant's theory at trial that he was relieved of his duty to pay rent due to plaintiff's alleged violation of her obligations under the lease. In addition, he introduced evidence which, he asserts, demonstrated that subsequent to the issuance of the 5 days' notice, he reached an agreement with plaintiff to pay rent only if she initiated repairs of the premises, and that he was at all times prepared to tender such rent upon fulfillment by plaintiff of her obligation under the agreement.

■■ We believe that defendant completely misapprehended the law governing the landlord-tenant relationship. Although the supreme court in a landmark decision has held that in some instances a landlord's breach of his covenants under a lease may relieve a tenant of the obligation to pay rent, this holding was made applicable exclusively to "the occupancy of multiple dwelling units." (*Jack Spring, Inc. v. Little*, 50 Ill.2d 351, 367, 280 N.E.2d 208.) In justifying its abandonment of the common-law rules in this area, the court alluded to the unequal bargaining positions of the modern urban apartment dweller and the landlord who "sells housing as a commercial businessman and has much greater opportunity, incentive and capacity to inspect and maintain the condition of his building." (*Little*, at 365, citing *Javins v. First National Realty Corp.* (D.C. Cir. 1970), 428 F.2d 1071.) No Illinois court has extended

the *Little* rule to commercial leases, and since in the case at bar we are reviewing a dispute which arose over a commercial lease, we must apply traditional common-law principles.

■■ It has traditionally been held that a landlord is not contractually bound to repair or maintain leased premises unless he has expressly agreed to do so by written covenants. (*Moldenhauer v. Krynski*, 62 Ill.App.2d 382, 210 N.E.2d 809.) Even if an express covenant to repair has been given, the usual construction is that the covenants of the lessor and lessee are independent, and therefore the lessee may not treat the lessor's failure to repair as a basis for stopping rent payments. (*Truman v. Rodesch*, 168 Ill.App. 304.) Moreover, a landlord's promise to repair made after the execution of a lease is mere *nudum pactum* and is thus unenforceable against him. See *Forshey v. Johnston*, 132 Ill.App.2d 1106, 271 N.E.2d 81; *Margolen v. deHaan*, 226 Ill.App. 110.

■■ In reality the factual situation presented in the instant case is the reverse of *Little*. Defendant, the tenant, a real estate broker, entered into a commercial lease with plaintiff, the landlord, a woman who, the record reveals, had little command of the English language. The lease included no express covenant to repair, and, as we noted above, even if one existed, plaintiff's violation of it would not have justified the withholding of rent. Furthermore, defendant's asserted agreement with plaintiff to pay rent upon repair of the premises is clearly unenforceable. From the foregoing it is clear that since defendant failed to unconditionally tender all the rent which was due, the court below was correct in finding for plaintiff on all issues. *Chapman v. Woolsey*, 4 Ill.App.2d 261, 124 N.E.2d 366.

■■ Defendant also contends that the court erred in denying his request for a jury trial on his counterclaim. As made clear by the court's finding, defendant's counterclaim for damages was without basis by virtue of the nonliability of lessor clause of the lease and thus did not even give rise to an issue which could be presented to a jury.

As to defendant's equitable counterclaim, we note that, essentially, it sought to enjoin the actions of plaintiff. Since in actions of this nature there is no statutory right to a jury trial and, moreover, even if a jury is empaneled, it serves a purely advisory function, it is clear that defendant suffered no prejudice as a result of the court's denial of his request for a jury trial. *Fisher v. Burgiel*, 382 Ill. 42, 46 N.E.2d 380.

The judgment entered below is affirmed.

Affirmed.

LORENZ and SULLIVAN, JJ., concur.