WILLA B. CHISOLM, Plaintiff-Appellant, *v.* CLARENCE STEPHENS, JR., *et al.*, Defendants-Appellees.

First District (3rd Division)    No. 76-57

Opinion filed March 30, 1977.—Rehearing denied May 4, 1977.

1000

1002

McNAMARA, J., dissenting.

Raymond P. Concannon, of Miller and Concannon, of Chicago, for appellant.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Michael K. Murtaugh, and Norman J. Barry, Jr., of counsel), for appellees.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiff, Willa D. Chisolm, brought action against defendants, Clarence Stephens, Jr., and Thomasina Stephens, for injuries sustained in a fall on the sidewalk of defendants' premises where plaintiff resided. Plaintiff's complaint alleged that defendants caused plaintiff's injuries by failing to remove ice and snow, alleging negligence in count I and wilful and wanton misconduct in count II. Defendants' motion for summary judgment was denied without prejudice in the motion court and the cause was assigned for trial. Prior to trial, the trial court granted defendants' renewed motion for summary judgment from which judgment plaintiff appeals.

Plaintiff on appeal contends that: (1) the trial court erred in granting summary judgment in favor of defendants; and (2) defendants' conduct for 15 years in regularly clearing the ice and snow from the walkway established a continuing duty or an implied agreement to clean the natural accumulation of ice from the walkway. We affirm.

The instant case involves a natural accumulation of ice and snow. The pertinent facts are set forth in the pleadings, depositions and exhibits presented to support and oppose defendants' motion for summary judgment.

Plaintiff's deposition and affidavit state that defendant Thomasina is her sister and that defendant Clarence is Thomasina's husband and her brother-in-law. Plaintiff has been living for 15 years in defendants' residence at 8626 South Michigan Avenue, Chicago, along with her mother, Claudia Thomas, and a niece, Gail Bennett. She paid rent of $50 per month under an oral agreement. On February 22, 1971, at 8 a.m. she left the house for work accompanied by her niece. As she left, she noticed it was sleeting and snowing. After proceeding three or four steps down the walk, she slipped and fell, fracturing her left wrist. The sidewalk was a sheet of ice. Prior to leaving, she had not discussed the condition of the walk with either defendant. There was no indication that anyone

attempted to clear or salt the walk. Plaintiff relied on Clarence to examine and clear the walk so that it would be safe when she left for work.

The affidavit of Gail Bennett added that she and plaintiff were the first to leave the house that morning.

The affidavit of Claudia Thomas stated that during the 15 years she lived with defendants Clarence would clear the walks in the winter months before the others in the house went to work. All members of the household relied on Clarence to examine and clear the walks in the morning of any ice and snow.

Defendant Clarence Stephens in his affidavit and deposition stated that when he returned home the previous evening between 11:30 p.m. and midnight, the walk was clear. During the early hours of February 22 an icy rain fell. Clarence did the outside work and if needed would clear the sidewalk of snow and ice each morning even if he had to be late for work. He had no need for a system of communication with the ladies in the house regarding the condition of the walk each morning since he "always kept it clean." He was unaware of what plaintiff paid for residing with them; such arrangements were taken care of by his wife. On the morning of the accident he glanced out of the window and the sidewalk just looked wet and damp. Upon examination after the fall the entire landscape was glazed and frozen over.

Defendant Thomasina Stephens in a deposition and affidavit stated plaintiff paid $50 per month plus a portion of the utilities "merely" for a room in the house. Plaintiff and the others had a separate agreement with her mother who was paid by each of them for her services in shopping for groceries and preparing meals. Clarence always took care of cleaning the sidewalks of ice and snow. The icy condition of February 22 must have developed during the morning hours because the walk was clear and dry the night before when defendants went to bed.

Plaintiff contends that the trial court erred in granting defendants' motion for summary judgment since the question of whether defendants breached this continuing legal duty is one which should be submitted for the trier of fact to decide.

Section 57(3) of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 57(3)) provides that summary judgment is appropriate " * * * if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment or decree as a matter of law." Thus, summary judgment is proper when the issue is determinable solely as a question of law. (*Sidwell v. Sidwell* (1975), 28 Ill. App. 3d 580, 328 N.E.2d 595; *Applicolor, Inc. v. Surface Combustion Corp.* (1966), 77 Ill. App. 2d 260, 222 N.E.2d 168.) In ruling on a motion for summary judgment, the trial court must construe the pleadings,

depositions and affidavits included therein most strictly against the moving party and most liberally in favor of the opponent. (*Baier v. State Farm Insurance Co.* (1975), 28 Ill. App. 3d 917, 329 N.E.2d 543; *Cronin v. Delta Air Lines, Inc.* (1974), 19 Ill. App. 3d 1073, 313 N.E.2d 245.) While plaintiff need not prove her case at this preliminary stage, she is required to present some factual basis that would arguably entitle her to a judgment under the applicable law. *Gehrman v. Zajac* (1975), 34 Ill. App. 3d 164, 340 N.E.2d 184.

■■ ■ It is fundamental that there can be no recovery in tort for negligence unless the defendant has breached a duty owed to the plaintiff. (*Boyd v. Racine Currency Exchange, Inc.* (1973), 56 Ill. 2d 95, 306 N.E.2d 39; *Barnes v. Washington* (1973), 56 Ill. 2d 22, 305 N.E.2d 535.) Similarly, in order to state a cause of action for wilful and wanton misconduct, facts must first be alleged from which the law would raise a duty to act. (*Clay v. Chicago Board of Education* (1974), 22 Ill. App. 3d 437, 318 N.E.2d 153.) The existence of such a legal duty is a question of law to be determined by the trial court. (*Mieher v. Brown* (1973), 54 Ill. 2d 539, 301 N.E.2d 307; *Clinton v. Commonwealth Edison Co.* (1976), 36 Ill. App. 3d 1064, 344 N.E.2d 509.) In the absence of any showing upon which the court could infer the existence of a duty, no recovery would be possible as a matter of law and summary judgment in favor of defendant would be proper. Therefore, plaintiff must affirmatively show that defendants owed her a legal duty to clear the sidewalk of the ice which had accumulated during the morning hours of February 22, 1971.

Plaintiff does not contest the general rule that, in the absence of a special agreement, a landlord owes no duty to his tenants to remove natural accumulations of ice and snow from common areas which remain under his control. (*Gehrman v. Zajac; Fitzsimons v. National Tea Co.* (1961), 29 Ill. App. 2d 306, 173 N.E.2d 534; *Cronin v. Brownlie* (1952), 348 Ill. App. 448, 109 N.E.2d 352.) Plaintiff does contend, however, that the instant case represents an exception to the general rule in that Clarence's conduct over 15 years in examining and cleaning the sidewalk of ice and snow created a legal duty for defendants to so act on every occasion thereafter.

■■ Initially, plaintiff argues that a covenant to clear the walks can be implied as a part of her oral rental agreement. Since a landlord ordinarily has no duty to remove natural accumulations of ice and snow, any agreement varying this duty on his part, whether express or implied, must be supported by consideration. (*Cf. Moldenhauer v. Krynski* (1965), 62 Ill. App. 2d 382, 210 N.E.2d 809; *Harlow v. Kulik* (1912), 169 Ill. App. 624.) Any new promise made by the landlord after the original leasing not supported by new consideration would be mere *nudum pactum* and no liability would result from the landlord's failure to fulfill such promise.

See *Yuan Kane Ing v. Levy* (1975), 26 Ill. App. 3d 889, 326 N.E.2d 51; *Forshey v. Johnston* (1971), 132 Ill. App. 2d 1106, 271 N.E.2d 81.

■■ In the instant case there was admittedly no express covenant relative to the alleged duty in the original rental agreement. Plaintiff's rental remained $50 per month throughout the 15-year period. Neither was there any new or other consideration from plaintiff to support a promise of additional duties or covenants assumed by defendants. Plaintiff never specifically discussed with defendants any undertaking to clean the walks. The only reference to the scope of the rental agreement was defendant Thomasina's statement that the $50 payment was merely in return for the right to live in a room in the house. It did not include meals for which separate provisions were made with her mother, Claudia Thomas. The right which plaintiff asserts was not created by the initial rental agreement which was neither superseded, altered or modified by any subsequent agreement based upon a legal consideration.

■■ ■ However, plaintiff further argues that even if gratuitous, defendant Clarence's performance over the past 15 years and plaintiff's reliance thereon are sufficient to raise a legal duty to examine and clean the sidewalk each morning before the occupants left for work. Plaintiff cites *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 199 N.E.2d 769, which is inapposite. There the defendant insurance company undertook to perform safety inspections of the equipment and practices of its insured. The charge was misfeasance and not nonfeasance. "Defendant was not charged with liability for omitting to perform an undertaking which plaintiffs or Auchter expected or relied upon it to undertake [citations], but was charged with having undertaken to perform safety inspections, a lawful act, and with having done so carelessly and negligently. [Citations.]" (31 Ill. 2d 69, 85, 199 N.E.2d 769, 779.) The supreme court there did not hold that the insurance company, having performed voluntary inspections in the past, had a duty to continue such inspections in the future. Rather, it held that having executed inspections gratuitously, the company was under a duty to perform *those* inspections in a skillful and nonnegligent manner. The holding is consistent with the general rule that a landlord who gratuitously undertakes to clear ice and snow from his premises has a duty to perform *that particular clearing* with ordinary care. (See 49 Am. Jur. 2d *Landlord and Tenant* §795 (1970).) Similarly, it is held that a landlord under no duty who nevertheless makes repairs and does so negligently is liable to a tenant for injuries caused thereby. *Jordan v. Savage* (1967), 88 Ill. App. 2d 251, 232 N.E.2d 580.

In *Jordan* (88 Ill. App. 2d 251, 262-63, 232 N.E.2d 580, 585) this court quoted with approval Justice Cardozo's statement:

" ' "It is ancient learning that one who assumes to act, even

though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." * * * A landlord in these circumstances is not charged with liability on the basis of the non-performance of a voluntary promise. He is charged with liability because having chosen to perform he has thereby become subject to a duty in respect of the manner of performance. * * * ' [Quoting Marks v. Nambil Realty Co. Inc., 245 N.Y. 256, wherein Justice Cardozo quoted from another of his decisions in Glanzer v. Shepard, 233 N.Y. 236.]"

(Also see *Sims v. Block* (1968), 94 Ill. App. 2d 215, 222, 236 N.E.2d 572, 575-6.) In such circumstances the gratuitous performance in undertaking actual execution created a physical hazard causing injury. It did not create a duty to be performed, but instead created a duty to perform, if at all, with due care. As stated in *Triolo v. Frisella* (1954), 3 Ill. App. 2d 200, 207, 121 N.E.2d 49, 52:

"The law imposes an obligation upon everyone who attempts to do anything, even gratuitously, for another, to exercise care and skill in what he has undertaken. Even a stranger or a volunteer is liable for an injury negligently inflicted on the person or property of another (38 Am. Jur. 659, Negligence, Sec. 17. *Roesler v. Liberty National Bank of Chicago*, 2 Ill. App. 2d 54, 118 N.E.2d 621). The good Samaritan incurs a responsibility avoided by those who 'pass by on the other side.' "

Furthermore, even a person who has gratuitously assumed to protect others against injury is under no obligation to continue that protection indefinitely. *Hubbard v. Aetna Insurance Co.* (1976), 37 Ill. App. 3d 666, 671, 347 N.E.2d 396, 400.

■■ The instant case involves nonfeasance, a complete omission or failure to perform, rather than misfeasance, a negligent performance. Here the issue is not defendants' manner of performance in clearing the ice from the sidewalk but whether they had any duty to perform the clearing on the day of the incident. A question of legal duty rather than a question of due care. Plaintiff failed to establish a contractual duty, either express or implied.

■■■ However, plaintiff argues that defendants by their conduct over the 15-year period of the rental agreement "in essence" advertised to their tenants that the monthly payments included a duty to examine and clear the sidewalk of ice and snow upon which plaintiff relied, and that defendants thereby created a duty which was breached by the nonperformance on the morning in question. This of necessity requires a real duty which cannot be supplied by proof of mere custom or usage. Such evidence is not admissible to explain or vary the terms of an express agreement, either written or verbal, unambiguous in its terms. (21 Am.

Jur. 2d *Customs & Usages* §25 (1965).) Defendants here made a practice of gratuitously clearing snow and ice in the past. Yet, custom or usage does not create a contract or a liability where none otherwise existed. (*National Iron & Steel Co. v. Hunt* (1924), 312 Ill. 245, 249, 143 N.E. 833; *Mick v. Kroger Co.* (1967), 37 Ill. 2d 148, 224 N.E.2d 859.) No claim is made that plaintiff relied upon or was induced by a prior customary practice to enter into the initial agreement and therefore she cannot now take advantage of the subsequent practice for the purpose of increasing her rights under that agreement. (Compare *Braun v. S. F. Hess & Co.* (1900), 187 Ill. 283, 58 N.E. 371.) The initial agreement was not ambiguous and did not obligate defendants to clear the ice and snow.

■■ Plaintiff correctly argues that liability for nonfeasance in connection with a gratuitous undertaking may arise where the beneficiaries had relied on its performance. (See *Hubbard v. Aetna Insurance Co.; Nelson v. Union Wire Rope Corp.* (1963), 39 Ill. App. 2d 73, 187 N.E.2d 425, *rev'd on other grounds*, 31 Ill. 2d 69, 199 N.E.2d 769 (1964); Restatement (Second) of Torts §323 (1965).) Under those circumstances the element of reliance lies at the very heart of the cause of action, and is a basic and necessary prerequisite to liability. (39 Ill. App. 2d 73, 125, 187 N.E.2d 425, 449.)

> " ' "It is the duty of one choosing to perform a gratuitous undertaking to take care lest he should mislead his promisee into the belief that the work has been well done and the premises made safe for use." There is liability if the making of the repairs gives the premises "a deceptive appearance of safety and so leads the tenant or others in his right to use the land in a way which but for the repairs they would recognize to be dangerous." ' " (*Roesler v. Liberty National Bank* (1954), 2 Ill. App. 2d 54, 60, 118 N.E.2d 621, 624, quoting *Kirshenbaum v. General Outdoor Adv. Co.*, 258 N.Y. 489.)

Reliance may reasonably be placed where there is a deceptive appearance that performance had been made, or where a representation of performance has been communicated to plaintiff by defendant, or where plaintiff is otherwise prevented from obtaining knowledge or substitute performance of the undertaking. But, to justify reliance, plaintiff must be unaware of the actual circumstances and not equally capable of determining such facts.

The reliance placed by plaintiff upon defendants' performance in the past, without more, is insufficient to impose any duty thereafter, in particular, on the morning of the accident. (*Cronin v. Brownlie; Spack v. Longwood Apartments, Inc.* (1959), 338 Mass. 518, 155 N.E.2d 873.) It must appear that the injured person did in fact rely upon the performance in order to render the landlord liable for negligence in executing

performance. (*Cronin v. Brownlie.*) Thus, a tenant who has no knowledge of the making of repairs places no reliance upon them and cannot recover for injuries caused even though the repairs are negligently made. So also, where the tenant knew the repairs were not adequate or proper, no recovery can be had for any injuries caused thereby. (49 Am. Jur. 2d *Landlord & Tenant* §795, at 747 (1970).

■■ ■ In the instant case, there was no undertaking by defendants on the morning of February 22, 1971, to clear the sidewalk of ice nor to apply salt. Defendants had not commenced any clearing operations that morning, nor had they even communicated with plaintiff to represent that such undertaking had taken place. Plaintiff's own evidence states that there were no signs that anyone attempted to clear or salt the sidewalk when she left the house that morning. She and Gail were the first to leave the house. As they left, she noticed it was then sleeting and snowing. If a danger existed and continued, it was because of mere inaction. The existing condition of an icy sidewalk was not a hidden defect or danger, but plaintiff and defendants must be held equally aware of the obvious and normal hazards which accompany the use of the icy sidewalk. (*Beccue v. Rockford Park District* (1968), 94 Ill. App. 2d 179, 236 N.E.2d 105.) Defendants did not entrap plaintiff by concealing facts which ordinary inspections would not reveal. Defendants did nothing to aggravate or make the ice condition more dangerous. Neither did they misrepresent that any action had been taken by them or misrepresent the condition of the sidewalk on the morning in question. Defendants did nothing to prevent plaintiff from obtaining information as to the conditions or from taking precautionary steps on her own behalf. Moreover, it was still sleeting and snowing when plaintiff slipped and fell on the sidewalk. Even where circumstances impose a duty to remove natural accumulations, a landlord is not required to do so while rain, snow and sleet continue to fall. (*Blumberg v. Baird* (1943), 319 Ill. App. 642, 49 N.E.2d 745.) Plaintiff's reliance under these circumstances could not be justified and would be unreasonable. Similarly, any reliance by plaintiff on the prior performances by defendants of ice and snow removal in the past is unjustified and unreasonable. Each prior snow and ice fall was an individual and temporary condition, unrelated to the present condition. The requisite reliance is not present in the instant case. No legal duty arose from the facts that defendants theretofore cleared the sidewalk of snow and ice, and defendants are not negligent as a matter of law. *Cronin v. Brownlie; Sims v. Block.*

■■ Plaintiff has emphasized defendant Clarence Stephens' statements that it was part of his "schedule" to inspect and clean the sidewalk each morning, even if it meant he himself had to be late for work. He stated that he "always kept it [the sidewalk] clean." Such

indications of a personal sense of duty or obligation, however, are hardly equivalent to the imposition of a legal duty upon defendants to clear the sidewalk after each snow or ice storm. The following principle is in point.

"One who, out of a considerate regard for the safety of others, customarily exercises a higher degree of care than the law requires should not, however, be penalized for failure to use *this* higher degree of care on a particular occasion." (Emphasis added.) 65 C.J.S. *Negligence* §16(b), at 602 (1966).

■■ Plaintiff has alleged and argues that defendants were also negligent in failing to warn her of the ice condition. Since the purpose of warning is to apprise a person of the existence of a danger of which he is not aware, there is no duty to warn against risks which are known and obvious. (*Bakovich v. Peoples Gas Light & Coke Co.* (1963), 45 Ill. App. 2d 182, 188-89, 195 N.E.2d 260.) Furthermore, the duty to warn coexists with the corresponding liability for the hazards of the condition if no warning is given. Inasmuch as defendants are not liable for failure to clear the natural accumulations of snow and ice, defendants were under no duty of warning against those hazards. (*Newcomm v. Jul* (1971), 133 Ill. App. 2d 918, 273 N.E.2d 699.) Therefore there can be no liability for the failure to warn.

Plaintiff cited *Durkin v. Lewitz* (1954), 3 Ill. App. 2d 481, 123 N.E.2d 151, and the dicta there favoring the Connecticut rule requiring property owners to remove natural accumulations of snow and ice after a reasonable time or be liable for injuries suffered by their tenants. In the case at bar, it was still snowing and sleeting so that no reasonable time had expired. However, the dicta in *Durkin* was expressly rejected by this court in *Foster v. George J. Cyrus & Co.* (1971), 2 Ill. App. 3d 274, 276 N.E.2d 38, which concluded that placing such burden on landlords in our climate would be unreasonable and virtually impossible to fulfill.

Plaintiff has not affirmatively shown that defendants owed her a legal duty to clear the sidewalk of snow and ice, or to warn her of the icy condition of the sidewalk. Therefore, no recovery is possible as a matter of law and summary judgment in favor of defendants was properly entered.

For the reasons stated, the summary judgment in favor of defendants is affirmed.

Affirmed.

McGLOON, J., concurs.

Mr. JUSTICE McNAMARA dissenting:
I respectfully must disagree with my colleagues. The facts of this case,

set out in detail in the majority opinion, manifest the existence of a genuine issue as to a material fact. Accordingly, defendants were not entitled to judgment as a matter of law. Ill. Rev. Stat. (1973), ch. 110, par. 57(3).

In Illinois, *in the absence of a special agreement*, a landlord is not required to remove natural accumulations of ice and snow from walkways on the leased premises. (*Cronin v. Brownlie* (1952), 348 Ill. App. 448, 109 N.E.2d 352.) At the very least, whether a special agreement existed, presents a genuine issue as to a material fact. The pleadings, affidavits, and depositions which were before the trial court evidenced that Clarence Stephens had cleared snow and ice from the sidewalks and steps each time they had accumulated during the 15 years of plaintiff's tenancy. Moreover, the allegations in plaintiff's complaint and the testimony in the form of depositions and affidavits were sufficient to infer that plaintiff had relied upon Stephens to continue this course of conduct. It was plaintiff's position, supported by affidavits and deposition testimony, that defendants assumed the duty of keeping the steps and walks clear of snow and induced her to rely upon them to see that such duty was performed. The duty was breached when Stephens failed to correctly ascertain the presence of ice and remedy the dangerous condition on the day in question.

At this stage of the proceedings, plaintiff need only show some factual basis which would arguably entitle her to judgment. (*Gehrman v. Zajac* (1975), 34 Ill. App. 3d 164, 340 N.E. 184.) Additionally, the pleadings, affidavits and depositions must be construed in the light most favorable to plaintiff. *National Bank v. S.N.H., Inc.* (1975), 32 Ill. App. 3d 110, 336 N.E.2d 115; *Baier v. State Farm Insurance Co.* (1975), 28 Ill. App. 3d 917, 329 N.E.2d 543.

The affidavits and depositions of all those residing in the Stephens' household, including defendants, were sufficient to establish that Stephens' routine inspection and removal of ice and snow from the walks represented his assumption of the duty to do so on each occasion requiring it. Stephens himself stated that he always cleaned the walks and steps before the tenants left in the morning, even if he had to be late for work in order to do so. According to Stephens there was no need for any formal system of communication with the tenants because it was assumed that he would always remove any snow and ice from the walks and steps prior to their leaving the premises in the morning. In addition to those statements made by Stephens, plaintiff stated in her deposition that she relied on Stephens to keep the premises free and clear of ice and snow. Defendant Thomasina Stephens also testified in her deposition that everyone relied upon Stephens to do all the outside chores, including the removal of ice and snow from the sidewalks and steps.

The opinion of the majority overlooks the language of this court in *Cronin v. Brownlie* (1952), 348 Ill. App. 448, 109 N.E.2d 352, which took cognizance of the position espoused by this plaintiff. In *Cronin*, plaintiff slipped and fell on ice which had accumulated on the walkway leading to her apartment. Plaintiff had used that sidewalk several times prior to her injury and each time it had been in an icy condition due to accumulations of snow and ice. This court, in reversing the judgment entered in favor of plaintiff, stated at pages 456-57:

> "Appellee contends that at times the landlord had removed the snow from the sidewalks and that this fact in itself created a legal duty and hence his failure to remove the ice from the sidewalk was negligence. If the plaintiff had relied upon this, this contention might be persuasive. The evidence in the record discloses that at the time the appellee left the apartment and for several days prior thereto, there was ice on the sidewalk and no one had made any effort to remove it. It appears that she did not rely on or expect the ice to be removed from the sidewalk and on the morning of her injury the ice was still there and in the same condition as when she left her apartment."

In the present case, plaintiff's testimony and the affidavits and depositions of the other members of the household [indicate that] plaintiff did rely upon the landlord to remove ice and snow and had so relied for 15 years. On the morning of plaintiff's injury, the glazed condition of the steps and walks was due to precipitation which had fallen during the night. On that morning Stephens looked out of the window at the steps and sidewalk and thought that it was only wet. Although he was subsequently informed by Claudia Thomas that it was icy and that he should put Sno-Flo on it before the tenants left for work, Stephens disregarded the suggestion and did not put anything on the walkway prior to plaintiff's departure. Stephens' testimony that he looked out the window and believed that the premises were only wet also rebuts any suggestion that plaintiff was guilty of contributory negligence as a matter of law.

Citing *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 199 N.E.2d 769, plaintiff asserts that Stephens' conduct over the previous 15 years represented a legal duty to remove ice and snow from the steps and walks on each occasion which necessitated the performance of that duty. The majority interpret the *Nelson* case as inapposite to the present case. However, in *Nelson* at page 74, the supreme court recognized " * * * that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." The record reflects that Stephens undertook to keep the walks and steps free and clear of ice and snow. Plaintiff, as well as the other tenants, relied

1012

upon him to continue that course of conduct. Whether Stephens' conduct over the period of plaintiff's tenancy created a duty upon which plaintiff relied and whether his actions on the morning of plaintiff's injury constituted a breach of that duty which would result in liability are questions that should properly be put to the trier of fact. Plaintiff has presented a sufficient factual basis which arguably would entitle her to judgment. I believe that Judge Schwartz in motion court correctly denied defendants', motion for summary judgment, and that the trial judge erred in granting that motion. For that reason, I would reverse that judgment and remand the cause for trial.