ERNESTINA ENRIQUEZ, as Special Adm'r of the Estate of Antonio Enriquez, and on her own behalf and as Mother and Next Friend of Antonio Enriquez, Jr., *et al.*, Minors, *et al.*, Plaintiffs-Appellants, v. THE CITY OF CHICAGO, Defendant-Appellee.

First District (6th Division)   No. 1—88—2680

Opinion filed August 25, 1989.—Rehearing denied October 3, 1989.

Johnson, Cusack & Bell, Ltd., of Chicago (Paul J. Wisner and Steven I. Rapaport, of counsel), for appellants.

Judson H. Miner, Corporation Counsel, of Chicago (Ruth M. Moscovitch and Thomas J. Dombai, Assistant Corporation Counsel, of counsel), for appellee.

JUSTICE QUINLAN delivered the opinion of the court:

Plaintiffs filed a wrongful death action against the City of Chicago (City) for the death of Antonio Enriquez, who died as a result of an automobile accident on a bridge owned and operated by the City. Plaintiffs alleged that the City was negligent in allowing the bridge to become icy and that Enriquez was killed as a proximate result of the city's negligence. The circuit court of Cook County granted summary judgment for the City and denied plaintiffs' countermotion for summary judgment, finding that the City was immune from liability for the icy condition of the bridge. (See Ill. Rev. Stat. 1987, ch. 85, par. 3—105.) Plaintiffs now appeal that decision. We affirm.

On November 20, 1981, at approximately 11 p.m., Antonio Enriquez was traveling west on 106th Street in Chicago. A car driven by Javier Bermea was traveling east on the same street. As both vehicles were crossing a bridge located at 3228 East 106th Street, Bermea's vehicle slid on ice which had accumulated on the bridge. Bermea's car slid into the lane of oncoming traffic and collided with Enriquez's car. Enriquez died as a result of this accident.

Thereafter, Ernestina Enriquez, as special administrator of the estate of Antonio Enriquez, and on her own behalf and as a mother and next friend of Antonio Enriquez, Jr., Carlos Enriquez, Alberto Enriquez and Guadalupe Enriquez, minors, and Maria Del Carmen Enriquez (plaintiffs), filed a six-count wrongful death action against Javier Bermea, Eleazar Bermea (Javier's father), and the City of Chicago. Counts V and VI were directed against the City and are the only counts involved in this appeal.

Count V of plaintiffs' complaint was brought on behalf of the estate of Antonio Enriquez, and count VI was brought on behalf of the decedent's next of kin. In those counts, plaintiffs alleged: that the City had control and possession of the bridge where the accident occurred; the City negligently allowed the bridge to become covered with an unnatural accumulation of ice and snow; the City knew or

should have known in the exercise of ordinary care that the bridge was in a dangerous condition due to the ice; the City failed to close the bridge to traffic even though the bridge was in a dangerous condition; and the City failed to warn motorists of the bridge's dangerous condition. Plaintiffs then alleged that Enriquez was killed as a proximate result of the City's negligence.

In its answer, the City admitted that it owned and controlled the bridge where Enriquez was killed and that it had a duty to maintain the bridge in a reasonably safe condition. The City denied, however, that it was negligent or that any act or omission on its part was the proximate cause of Enriquez's death. The City, in its answers to plaintiff's interrogatories, said that it employed two bridge tenders at the bridge in question at all times. The City also said that there were no signs posted on 106th Street, near the bridge, warning that the bridge was slippery and icy.

Several depositions were also taken in connection with this case. Officer William Bratek, a Chicago police officer who was assigned to the "Major Accident Investigation" section of the department on November 20, 1981, was among those who gave a deposition. Bratek testified that he was called to the scene of the accident between Enriquez and Bermea and saw two vehicles on the east side of the bridge. Bratek said that 106th Street was dry and clear at that time, but that there was a "minor layer of ice" on the street approaching the bridge from the west.

John Aquino, a meteorologist and vice-president of the operational forecast group at Murray and Trettel, Inc., also gave a deposition and provided an affidavit in this case. Aquino related in his sworn testimony that temperatures were above freezing during the daytime on November 20, 1981, and that any snow that fell during the daytime would have melted when it landed on the bridge. Aquino also said that after the sun set that day, around 4:30 p.m., the temperatures dropped below freezing. Aquino stated that the temperature of the bridge would then have dropped to the freezing point, due to the air circulation around the bridge, as well as the fact that the bridge was constructed of metal and concrete. Once the bridge reached the freezing point, he said, any snow that fell on the bridge would not melt, but instead would begin to accumulate as a "slush." Aquino estimated that the slush would freeze within an hour as the temperature continued to drop, and that any subsequent snow that fell would collect on top of the frozen slush. However, Aquino said, in the areas adjacent to the bridge, including the roads, the snow that fell would continue to melt and evaporate because the temperature of the ground would

drop at a much slower rate than the temperature of the bridge. Aquino explained that this was the reason bridges often froze while the roads remained clear and dry.

In addition to the foregoing, the "Rules and Regulations for Bridge Tenders" and the "Rules and Regulations for Guidance of Bridge Tenders" (hereinafter both will be referred to as rules and regulations) were submitted to the court without objection. The rules and regulations instructed bridge tenders that, "[s]now and ice must be removed from bridge sidewalks and not be allowed to accumulate. The chemical component supplied at all bridges must be used when warranted by conditions." In addition, the specific rules and regulations pertaining to snow and ice removal instructed bridge tenders:

> "Whenever snow falls, clear the sidewalks, and then the roadways frequently, so that it will not accumulate sufficiently to interfere with operation of the bridge. Start from the center and clean all the way towards the roadway gates. Be careful and avoid danger of injury from street traffic.

> If it snows hard do not wait for the snow to cease, but proceed at once as outlined above. Clean thoroughly to prevent an accumulation of slush from freezing hard and becoming dangerous (particularly on roadways). Sweep snow from rack pinions. Also clean snow and ice off river pedestals. Keep snow clear from center break in roadway joints so as to reduce probability of freezing together of the leaves which might hinder opening of the bridge.

> When sidewalks (especially approach sidewalks) or roadways, or both, are covered with ice or sleet, sprinkle well with ashes or cinders. NEVER USE SALT on the bridge or approach since such use will result in some of the salt getting into the machinery, with harmful results."

The City filed four separate motions for summary judgment (its original motion and three amended motions), plaintiffs responded to each motion and, in addition, filed counter motions for summary judgment. In each of its motions for summary judgment, the City contended that it was not liable to the plaintiff based on section 3—105 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act or Act) (Ill. Rev. Stat. 1987, ch. 85, par. 3—105). Section 3—105 provides that a local public entity or public employee is not liable for injuries which result from the effect of weather conditions, including the natural accumulation of ice and snow. In their countermotions, the plaintiffs argued that the accumulation of ice and snow on the bridge where Enriquez was killed could not be

considered a natural accumulation because the accumulation occurred only on the bridge, while the surrounding roads remained clear and dry. The plaintiffs further claimed that, even if the accumulation of ice and snow was natural, the City was not relieved of liability here inasmuch as the City had bridge tenders on duty at the time of the accident, and these bridge tenders failed to fulfill their duty to clear the ice off the bridge or to warn motorists of the danger.

A hearing on the City's third amended motion for summary judgment was held on July 27, 1988. The court, as noted previously, granted summary judgment for the City and denied plaintiffs' countermotion for summary judgment.

On appeal, the plaintiffs initially contend that the trial court erroneously granted summary judgment for the City because it incorrectly found the City was immune from liability under section 3—105 of the Tort Immunity Act. Plaintiffs assert that the accumulation of ice and snow on the bridge where the accident occurred was not a natural accumulation as contemplated by the Act, because the roads throughout the City and around the bridge were clear and dry and it was only the bridge which retained snow.

On the other hand, the City argues that the trial court properly granted summary judgment in its favor because, it asserts, the accumulation of snow and ice on the bridge was a natural accumulation. Furthermore, the City notes that plaintiffs failed to offer any evidence of a structural defect in the bridge or of a condition of the bridge that would cause an unnatural accumulation.

■ In deciding whether to grant summary judgment, a trial court must construe all pleadings, depositions, admissions and affidavits on file strictly against the moving party and liberally in favor of the opponent. (*Dodd v. Cavett Rexall Drugs, Inc.* (1988), 178 Ill. App. 3d 424, 432, 533 N.E.2d 486, 491.) The court will then grant summary judgment in favor of the movant if it determines that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. (*Dodd*, 178 Ill. App. 3d at 431, 533 N.E.2d at 491.) A plaintiff is not required to prove a *prima facie* case in order to withstand a motion for summary judgment; however, the plaintiff must present some facts to support his or her claim. *Dodd*, 178 Ill. App. 3d at 432, 533 N.E.2d at 491.

Here, the trial court found that the plaintiffs failed to present any facts to support their claim that the accumulation of ice and snow on the bridge was unnatural. Consequently, the trial court found that section 3—105 of the Tort Immunity Act was applicable and held that the City was not liable. The pertinent portion of the Tort Immunity Act

provides:

> "Neither a local public entity nor a public employee is liable for an injury caused by the effect of weather conditions as such on the use of streets, highways, alleys, sidewalks or other public ways, or places, or the ways adjoining any of the foregoing \*\*\*. For the purpose of this section, the effect of weather conditions as such includes but is not limited to the effect of wind, rain, flood, hail, ice or snow but does not include physical damage to or deterioration of streets, highways, alleys, sidewalks, or other public ways \*\*\*." (Ill. Rev. Stat 1987, ch. 85, par. 3—105(a).)

When enacted, this section of the Act codified the preexisting common law rule of nonliability and also extended that rule to counties. *Lansing v. County of McLean* (1978), 69 Ill. 2d 562, 572, 372 N.E.2d 822, 827. See also *Strappelli v. City of Chicago* (1989), 371 Ill. 72, 20 N.E.2d 43; *Graham v. City of Chicago* (1931), 346 Ill. 638, 178 N.E. 911.

■ We agree with the trial court that the plaintiffs failed to provide any evidence that the accumulation here was unnatural. In the cases where a court has found a municipality liable for an unnatural accumulation of ice and snow, the evidence showed that the accumulation was due to a defect in the road or sidewalk or some other unusual circumstance. See, *e.g., Graham*, 346 Ill. 638, 178 N.E. 911 (city liable for allowing water to overflow from ice rink onto sidewalk and for not removing ice after it had remained for at least 13 days); *Jones v. City of Rock Island* (1968), 101 Ill. App. 2d 174, 242 N.E.2d 302 (broken and uneven curb created unnatural accumulation of ice).

Here, the only evidence concerning the accumulation of ice and snow on the bridge was Aquino's testimony that snow fell throughout the day on November 20, 1981, and that the ice and snow would have accumulated on the bridge before it accumulated on the streets because the temperature of the bridge was at or below freezing, and the temperature of the roads around the bridge was above freezing. Plaintiffs did not allege any unusual circumstances or defect on the bridge which would have created an unnatural accumulation of ice and snow. Therefore, we find that the trial court properly held that there was no genuine issue of material fact.

■ Plaintiffs next contend, however, that even if the accumulation of ice and snow on the bridge was natural, the Tort Immunity Act nonetheless does not apply because the ice and snow here were hidden dangers. The plaintiffs assert that a hidden danger is an exception to the rule of nonliability for the natural accumulation of snow

and ice. Thus, the plaintiffs continue, since the ice and snow here were hidden dangers, the City had a duty to warn motorists of this danger. Plaintiffs rely on *Sommese v. Maling Brothers, Inc.* (1966), 36 Ill. 2d 263, 222 N.E.2d 468, and *Fanning v. Lemay* (1966), 78 Ill. App. 2d 166, 222 N.E.2d 815, *rev'd on other grounds* (1967), 38 Ill. 2d 209, 230 N.E.2d 182, to support their claim that the icy condition of the bridge here was a hidden danger.

The cases cited by the plaintiffs are not applicable to the circumstances here. In those cases, the courts held that a store owner who generally has no duty to remove snow or water which is tracked into his building from outside can be liable where the plaintiff specifically alleges that the material used in constructing the floor was especially slippery when wet. In such a situation, those courts ruled, it was a question for the jury to decide if the owners knew or should have known of this dangerous propensity, and, if the owners did, they would be liable for failing to warn the plaintiff of the condition. (See *Sommese*, 36 Ill. 2d 263, 222 N.E.2d 468 (terrazzo floor); *Fanning*, 78 Ill. App. 2d 166, 222 N.E.2d 815 (asphalt tile floor).) Plaintiffs argue that the surface of the bridge here was especially slippery when wet and icy and, accordingly, the exception to the general rule applies here, too, as it did the *Sommese* and *Fanning* cases.

In response, the City denies that the *Sommese* and *Fanning* decisions are analogous to this case. The City asserts that there was nothing unusual or unnatural about the surface of the bridge and the plaintiffs failed to present any evidence that the materials used in constructing the bridge or the design of the bridge created a greater likelihood that ice would form on the bridge. Thus, the City says that the trial court properly granted summary judgment in its favor.

We find the *Sommese* and *Fanning* decisions readily distinguishable from this case. In those cases, as noted, there was evidence that the floors were especially slippery when wet because of the materials used in constructing the floors. Here, as the City contends, the plaintiffs never alleged or offered any evidence showing that the materials used in constructing the bridge rendered the bridge especially slippery when wet or icy, or that there was anything else unusual about this bridge. Hence, there was no genuine issue of material fact present here and the City was entitled to judgment as a matter of law. See *Lohan v. Walgreens Co.* (1986), 140 Ill. App. 3d 171, 175, 488 N.E.2d 679, 681-82 (even assuming jury could infer that plaintiff slipped on floor which was wet from tracked-in water, absent allegation that floor material was especially slippery and dangerous, defendant not liable as a matter of law).

Plaintiffs also attempt to analogize this case to the "hidden danger" found in the case of *Pasierb v. Hanover Park Park District* (1981), 103 Ill. App. 3d 806, 431 N.E.2d 1218. There, this court held that the Hanover Park Park District was liable for the wrongful death of a seven-year-old child who drowned when he fell into a creek that had been completely covered by a layer of ice and snow. The ice and snow made it impossible to discover the location of the creek. Plaintiffs contend that the *Pasierb* case shows that a land owner may be held liable for the "hazardous conditions caused by the natural effects of the weather." We find the situation in the *Pasierb* case radically different from that presented here. In *Pasierb*, we held the park district liable on the basis of a duty to warn because it knew that children frequented the area and the creek which was completely concealed by the ice and snow was not the type of risk that children of tender years are generally expected to recognize. (*Pasierb*, 103 Ill. App. 3d at 808-09, 431 N.E.2d at 1220.) The *Pasierb* court also stated that the case involved a "specific hidden danger on the land," *viz.*, a ditch filled with water which was hidden by ice and snow, as opposed to a natural accumulation of snow. (*Pasierb*, 103 Ill. App. 3d at 810, 431 N.E.2d at 1221.) Here, the only hidden danger alleged by plaintiffs was the natural accumulation of ice and snow itself, and this is not a hidden danger.

Plaintiffs also claim that the City had a duty to warn of the icy condition of the bridge. Plaintiffs assert that the bridge tenders had at least constructive knowledge that the bridge was hazardous, should have known that this hazardous condition would be dangerous to motorists, and consequently, had a duty to warn motorists of that condition. The City denies that it had any such duty to warn here.

■ If a municipality has no duty to remove accumulated snow and ice, it, therefore, also has no duty to warn that it has not done so. (*Lansing*, 69 Ill. 2d at 573-74, 372 N.E.2d at 827.) Since we have found that the City was not liable for the accumulation of ice and snow on the bridge here, we must also find that the City had no duty to warn motorists of the accumulation. (See also *Chisolm v. Stephens* (1977), 47 Ill. App. 3d 999, 1009, 365 N.E.2d 80, 87 ("duty to warn coexists with the corresponding liability for the hazards of the condition if no warning is given").) Hence, we reject the plaintiffs' contention that the City had a duty to warn.

■ Alternatively, plaintiffs contend that even if the accumulation of ice and snow on the bridge was a natural accumulation for which the City is generally not liable, the City nonetheless incurred liability here because it voluntarily assumed the duty of tending the bridge.

Plaintiffs assert that the trial court misconstrued the scope of the City's voluntary undertaking and, thus, erroneously granted summary judgment in favor of the city.

Specifically, plaintiffs allege that the City voluntarily assumed the duty to maintain the bridge in a reasonably safe condition when it hired bridge tenders, and required them, as part of their job, to keep snow and ice from accumulating on the bridge. Plaintiffs argue that the trial court was in error when it held that the City could not be held liable because the bridge tenders never attempted to remove the ice and snow. Plaintiffs contend that the City undertook a duty to do so under its own rules and regulations for bridge tenders, and the failure to do so under the circumstances here was negligence.

In response, the City admits that it does have a duty to keep the bridge in a reasonably safe condition, but asserts that its duty to keep its bridge in a reasonably safe condition does not include the duty to clear the natural accumulation of ice and snow from the bridge. Furthermore, the City argues that its employment of bridge tenders did not create a duty or an undertaking to clear the bridge inasmuch as the City had no contractual or statutory obligation to remove snow and ice, and its bridge tenders never attempted to remove the snow and ice on November 20, 1981. Finally, the City maintains that its rules and regulations for bridge tenders did not create a duty on the part of the City to remove snow and ice, but were merely part of the bridge tenders' manual for operating the bridge.

As noted above, in order to withstand a motion for summary judgment, a plaintiff must present some facts to support his or her claim. (*Dodd*, 178 Ill. App. 3d at 432, 533 N.E.2d at 491.) The plaintiffs here failed to present sufficient facts to show that the City had voluntarily assumed the duty to clear the snow and ice from the bridge. The mere fact that the City employed bridge tenders did not create any duty to remove snow and ice from the bridge. We believe this case is similar to *Chisolm v. Stephens* (1977), 47 Ill. App. 3d 999, 365 N.E.2d 80. There, this court held that a landlord had no duty to clear a sidewalk of snow and ice on the day that the plaintiff was injured there even though the landlord had previously examined and cleaned the sidewalk each day for 15 years. As the court stated there, and, which is also relevant to this case:

> "The instant case involves nonfeasance, a complete omission or failure to perform, rather than misfeasance, a negligent performance. Here the issue is not defendants' manner of performance in clearing the ice from the sidewalk but whether they had any duty to perform the cleaning on the day of the incident.

\*\*\* Plaintiff failed to establish a contractual duty, either express or implied." *Chisolm*, 47 Ill. App. 3d at 1006, 365 N.E.2d at 85-86.

Here, too, the issue was whether the City had a duty to clear the bridge on the day of the accident. We agree with the City that its duty to keep the bridge in a reasonably safe condition did not include the duty to clear the bridge of the natural accumulation of snow and ice, absent any statutory or contractual obligation imposed for the benefit of the plaintiff. Furthermore, since there was no duty to remove a natural accumulation here, nor any affirmative attempts by the bridge tenders to clear the snow and ice, there could be no liability on the City for not doing so. The accumulation on the bridge here was natural and the City had no duty to specifically remove it; hence, the City was not liable to the plaintiff under the provisions of section 3—105 of the Tort Immunity Act.

Accordingly, for all of the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

McNAMARA and La PORTA, JJ., concur.